```
18:00   1              IN THE UNITED STATES DISTRICT COURT
                       FOR THE NORTHERN DISTRICT OF TEXAS
        2                       DALLAS DIVISION

        3

        4
              J-W OPERATING COMPANY        (      Number 3: 11-CV-920-F
        5          Plaintiff,              (
              vs.                          (
        6                                  (
              Oilfield Services            (
        7          Defendant.              (      January 4, 2012

18:00   8


        9      _____

       10                  Hearing on Motion to Transfer
                        Before the Honorable Royal Furgeson
       11

       12      _____

               A P P E A R A N C E S:
       13

       14      For the Plaintiff:  DAVID A. MILLER
                                   JULIE WALKER
       15                          MILLER MENTZER PC
                                   P.O. Box 130
       16                          Palmer, TX 75152
                                   Phone: 972/845-2222
       17                          Email: dmiller@milmen.com

       18
               For the Defendant:  KEITH A. ROBB
       19                          KENNETH LAMBERT
                                   FLETCHER FARLEY SHIPMAN & SALINAS LLP
       20                          8750 N Central Expwy, 16th Floor
                                   Dallas, TX 75231
       21                          Phone: 214/987-9600
                                   Email: keith.robb@fletcherfarley.com

       22

       23      Reported by:        Cassidi L. Casey
                                   1100 Commerce Street, Rm 15D6L
       24                          Dallas, Texas 75242
                                   Phone: 214-354-3139
       25                          Email:  Cassidi45@aol.com
```

```
18:00  1                    P R O C E E D I N G S :

       2            THE COURT:  Would the clerk call the case and

       3     could I get counsel to announce their names and their

       4     representation.  So Mr. Frye, if you will please call the

       5     case.

       6            MR. FRYE:  3:11-CV-920, J-W Operating Company

       7     versus Oil Field Services.

       8            THE COURT:  For J-W Operating Company.

       9            MS. WALKER:  Julie Walker and David Miller.

      10            THE COURT:  Great.  Ms. Walker and Mr. Miller,

      11     welcome.

      12            THE COURT:  And for Oil Field Services.

      13            MR. LAMBERT:  Kenneth Lambert and this is Keith

      14     Robb.

14:07 15            THE COURT:  Wonderful.  Welcome both of you.

      16     Glad to have you all here.

      17            Okay.  I believe that the Defendant Oil Field

      18     Services would like this case to go to Louisiana, and so

      19     Mr. Lambert, why don't you and Mr. Robb give me your views

      20     on that.

      21            MR. LAMBERT:  You want us to use the stand?

      22            THE COURT:  That's perfect.  Thank you so much.

      23            MR. LAMBERT:  Essentially -- And I'm sure

      24     counsel will correct me if I'm wrong on this -- this

      25     involves an oil field accident in Shreveport, Louisiana.
```

14:08  1    It's not where somebody was hurt.  There was damage.  It

2    was an oil well, and some casing was being run and the

3    string of casing somehow got dropped in the hole, and

4    there was remediation attempted, and eventually the hole

5    was plugged, and they drilled another hole.  Plaintiff's

6    claiming it's our company's responsibility, and we beg to

7    differ.  No surprise there.  Plaintiffs filed a lawsuit

8    here in Dallas in state court which we removed to federal

9    court.  Our client filed a lawsuit in Louisiana in

10    Shreveport.  And both cases have been at a stopping point.

11    Clearly nobody wants to be trying the case in Dallas and

12    in Louisiana at the same time.

13         THE COURT:  Remind me who is your Louisiana

14    judge?

14:09  15         MR. LAMBERT:  Tom Stagg.

16         THE COURT:  Well, let me tell you, I can barely

17    carry his briefcase.  I don't know how long he's been a

18    district judge now.  Probably thirty years or so.  Forty

19    years.  So he's a wonderful judge, very bright, very able

20    and very pleasant, just a good guy.  And the rest of us

21    look at him with awe for all of his long years of service

22    and knowledge, and you can tell him I said so.

23         MR. LAMBERT:  Well, as we see, Louisiana, they

24    are sitting there will waiting to see what you do with the

25    case, and not a lot of discovery clearly has taken place

14:09   1   because nobody wants to act like they are waiving their

2   arguments.

3           THE COURT:  I did notice you had a little

4   problem with a deposition I think.  Hopefully, you can

5   figure out how to get that straightened out.  But we will

6   worry about that in a minute.

7           MR. LAMBERT:  Essentially, what the situation

8   is, this accident happened in Louisiana.  Everything that

9   happened relating to it -- all the actions, all the

10   activities, the well that was drilled, the remediation

11   that was done, the well that was plugged -- all of that

12   was in Louisiana, and I don't think anybody contests that

13   Louisiana law is eventually going to apply to the facts of

14   this case.  And as a threshold matter, obviously any court

14:10  15   can apply any other state's laws.  Louisiana law is a

16   different animal from Texas.  And personally I would

17   prefer to have a Louisiana lawyer arguing and interpreting

18   Louisiana law.  And I suspect that's what's going to end

19   up happening, the difference being whether we have local

20   counsel here with a Louisiana lawyer that comes in or

21   whether it's all in Louisiana where the lawyers are right

22   there.

23           THE COURT:  Now, let's see.  I guess there are

24   really quite a few witnesses to this incident.

25           MR. LAMBERT:  Yes, sir, your Honor, it appears

14:11  1    so.  The hard thing is with just the disclosures where we

2    can see who some of the witnesses are and who was involved

3    actually out there on our client's behalf or the

4    plaintiff's behalf, there are also a number of remediation

5    companies that were out there trying to fish out the

6    casing.  We at least as far as I know don't know who the

7    actual individuals are that were involved in that process.

8    We just know the names of the companies.  They are all

9    Louisiana companies, all based in Louisiana, and so we can

10   only assume those are people in Louisiana.  Until we take

11   additional discovery, there is no way to know.  I know the

12   plaintiffs say who really cares about that.  They were

13   just trying to fix it.  But I think that's going to be

14   relevant in this case -- what they saw, what they were

14:12  15   trying to do, whether they spent too much time and too

16   much money trying to fix the problem, whether it should

17   have been capped and started a new drilling operation.

18   Those are going to be relevant and those people are going

19   to be relevant.  If the driller who's a party to the case

20   in Louisiana but not a party to this case, I believe he's

21   based here in Dallas.  We don't know the actual person who

22   was the driller on site, whether he was hauled out from

23   Dallas or a local Louisiana person, because the driller

24   won't tell us.

25              THE COURT:  The driller is in the Louisiana

14:12  1    case.

       2            MR. LAMBERT:  Yes, he's made a defendant in the

       3    Louisiana case, but he's not a party to this case.  Is

       4    that correct?

       5            MS. WALKER:  Patterson-UTI Drilling Company is

       6    not a party to case.  We know the driller who was Joe

       7    Paul, and we disclosed that in our amended disclosures.

       8    He's actually in Lewisville.

       9            MR. LAMBERT:  So apparently now we do know who

      10    he is.

      11            But essentially, what we're stuck with is there

      12    are a number of witnesses.  It appears that the bulk of

      13    them probably are in Louisiana but there are certainly

      14    some out here.  I'm not going to come in here and say

14:13 15    there is nobody here in Dallas because clearly the

      16    plaintiffs are located here and the driller's offices are

      17    located here.  No questions that Shreveport would be a

      18    place that would be proper for this to be tried.  The

      19    question of whether this would have been appropriate or

      20    not is no longer relevant because we have removed the case

      21    to federal court to waive any arguments related to venue,

      22    of course.

      23            Essentially, this is a Louisiana action.  Took

      24    place in Louisiana.  Everything happened there.  It makes

      25    sense for it to be tried or resolved in a more local type

14:14 1    environment as opposed to dragging everybody and all the

2    matters out here to Dallas.  I know we're not in the

3    1800's where it would take you two or three days to get

4    from there to here.  I know people can fly or drive in a

5    few hours.  But it makes more sense to have the court and

6    jury and all of that in the local area resolving the

7    matters of local interest.  And that is the bulk of our

8    argument right there, your Honor.

9          THE COURT:  Let me ask and I appreciate that.  I

10   did notice that maybe the parties had kind of gotten

11   cross-wise on getting depositions started.  Are the

12   parties having trouble working with each other?

13         MR. ROBB:  We are not.  It was a bit of a

14   mishap, and if it aids the Court, we made a motion for

14:15 15   protective that we don't need.  We have reached an

16   agreement, a time for the deposition, and we have people.

17   Ms. Walker is poised I think to notice the deposition as

18   soon as I confirm the location is okay, and unfortunately,

19   the holidays missed that.  We are playing well together.

20   Whatever the Court finds easiest, we can ask to withdraw

21   the motion or.

22         THE COURT:  I can deny it as moot.

23         MR. ROBB:  I think that would be a fine result.

24   I think the deposition is scheduled on the 19th.  I think

25   we need to make that official.

14:15  1          MS. WALKER:  We have three depositions scheduled

2  for the 19th and 20th, and part of the issue with the

3  motion to compel -- and this is the delay that came about.

4  We had the initial deposition of the corporate

5  representative set for December 7th.  We were trying to do

6  that to meet this Court's deadline of I think December

7  30th in order to designate our experts.  Because we could

8  not get a corporate representative of Oil Field Services

9  on December 7th, despite -- We can go into the merits of

10  that motion.  But despite trying to work that out

11  beforehand, what we have got is delay.  So I sit here

12  now -- And quite honestly, we would have that deposition

13  done and our experts designated if it wasn't for that

14  delay.  So as far as the portion of the motion to transfer

14:16  15  that deals with that issue, one of the practical concerns

16  is the delay and is how much work has been done.  We have

17  done significant work.  We have done written discovery.

18  J-W Operating Company has sent written discovery and

19  requested depositions and tried to push this case along.

20  But we got a little bit sidetracked with the motion for

21  protective order.  But yes, it is set now, and hopefully,

22  we won't have that issue again.

23          THE COURT:  Well, I'm always glad to see the

24  lawyers working together.  Sounds like there were initial

25  hiccups.  But I commend a professional approach to these

14:17  1 | matters.  Well, your argument has been very helpful,

2 | Mr. Lambert.  Thank you so much.

3 | Now I'll hear from you, Ms. Walker.

4 | MS. WALKER:  If I may.

5 | THE COURT:  Yes, ma'am.

6 | MS. WALKER:  First of all, I think counsel sort

7 | of handled Part One of my argument which is in the removal

8 | motion itself, they did admit the venue is proper in this

9 | district.  And because the United States District Court

10 | for the Northern District is where Dallas sits and that's

11 | where the state court action was filed and pending

12 | removal.  That of course is not an issue that we need to

13 | look at for purposes of this.

14 | Just to backtrack a little bit.  I know the

14:17 15 | Court has read all of our briefing.  J-W Operating Company

16 | is a Dallas corporation.  It's based in Addison, Texas.

17 | It's the principal place of business.  It's a Texas

18 | corporation.  The driller, Joe Paul, who did the drilling

19 | work in my understanding is from Louisville, and a lot of

20 | other folks that were on the drill rig at the time -- And

21 | there were really only a handful that I understand were on

22 | duty at the time, three or four for Patterson drilling --

23 | they are scattered to the winds.  They are not necessarily

24 | within the jurisdiction of Shreveport anymore than here.

25 | One of them I think is in Georgia, and they are in other

14:18  1    places as well.  So to say that it would be better in

       2    Shreveport than it is here for those folks, they are a

       3    pretty transitory life working on a drilling rig.

       4            THE COURT:  You have not yet sued Patterson.  Do

       5    you plan to sue Patterson or do you think you have done

       6    enough research to think that they are not implicated in

       7    this case?

       8            MS. WALKER:  Based on our investigation, we

       9    decided in this lawsuit not to bring in Patterson as a

      10    party.  They are a party in the Louisiana case and have

      11    actually worked with us to provide some of the information

      12    that we have on our amended disclosures.  For instance,

      13    the location, name of the driller.  I think we have some

      14    other information such as statements from Patterson.  So

14:19 15    we have got their view on what happened as far as that

      16    goes.  We have -- J-W Operating Company had a company man

      17    out at the site who's not within the Northern District,

      18    but he also is the J-W Operating Company -- was the

      19    company man who worked for a different company, but no one

      20    here has said that he would be unwilling to testify.  And

      21    I think that's what courts generally say.  There is a

      22    strong burden that the defendant has to prove to go in

      23    favor of transfer of venue in this case.  There is the

      24    private factors and the public factors.  And one of the

      25    main private factors is the delay that has come about.

14:19  1   There is numerous cases, one of which is really

2   instructive by your colleague, Judge Boyle, in the Duvall

3   Electric case.  She denied a motion to transfer back in

4   February of 2011 where the defendant waited just four

5   months after filing an answer, but the joint status

6   reports had been filed.  Disclosures had been exchanged.

7   A scheduling order had been entered, and experts had been

8   designated.  It was four months from trial.  Here, we're

9   six months out.

10          THE COURT:  Remind me what kind of case that

11   was, if you would.

12          MS. WALKER:  It was an ERISA case.  And there

13   was the presumption of plaintiff's venue taking precedence

14   just as there is a presumption unless there is clear

14:20 15   weight against having a venue in Dallas that that is

16   proper.  We have sixty days left in discovery, and the

17   trial is four and a half months away.  To move it is one

18   of the private factors that would militate against

19   transfer of the case, would be the practical problems that

20   make trial easy, expeditious and expensive.  And the delay

21   that is shown in the Duvall Electric case.  I have a copy

22   of the opinion.

23          THE COURT:  That's Judge Boyle's case?

24          MS. WALKER:  It is.

25          THE COURT:  Oh, great.  That would be helpful.

14:21  1            MS. WALKER:  Judge Boyle in this opinion

2     actually relied upon a lot of case law that we cited in

3     our brief.  The American Airlines opinion and N2

4     Consulting, both of which the motion to transfer venue was

5     denied due to delay, and Judge Boyle in the Duvall

6     Electric case said "The delay in this case weighed very

7     strongly and heavily against transfer simply because it

8     was going to be so disruptive to the case and the

9     scheduling order that was pending."

10            One of the things I would like to address, we

11     have talked a little bit about the personnel that was on

12     the site at the location of the accident.  The well was

13     drilled in Bossier, Louisiana, and the drilling rig after

14     fishing attempts in the hole were unsuccessful, the well

14:22 15     was sidetracked and completed, and the drilling rig has

16     moved on to other parts.  So if anybody were to go out to

17     this drilling site right now, what they would see is a

18     well head and nothing more.  Nobody has said a trip to the

19     well site would be instructive or helpful.  The drilling

20     rig itself is a different matter, and whether that's in

21     Shreveport or Dallas, it's again a transitory kind of

22     thing.

23            The cost of attendance for witnesses -- and what

24     we're talking about the mainly in this case, there is two

25     different types of witnesses.  Witnesses that are party

14:23   1   witnesses and witnesses that are nonparty witnesses.  The

  2   party witnesses for Oil Field Services are mainly located

  3   locked according to their affidavit are located in the

  4   Shreveport area.  The witnesses for the J-W Operating

  5   Company are located primarily in the Dallas area.  So the

  6   nonparty witnesses -- the willing witnesses that are able

  7   to attend, the cost of that is what we're looking at here

  8   is one of those five factors.  Many of the witnesses that

  9   we listed, that J-W Operating Company listed on its

  10   disclosure statement, were listed to authenticate business

  11   records for the purposes of approving up invoices.  The

  12   damages in this case were roughly -- It was right over 2.1

  13   million dollars, and authentication of those records could

  14   be done without attendance of those witnesses, just

14:23 15   through business records alone.

  16          If there is a question as far as whether fishing

  17   attempts went on too long or took too long, those are

  18   decisions that are made by J-W Operating Company personnel

  19   or their designees and not necessarily the fishing or

  20   logging companies.  No one has said they would not be

  21   willing participants, and to my knowledge, there was no

  22   contention that they would not be willing participants

  23   able to come over and willing to come over to Dallas for

  24   depositions, if necessary.  That's one of the things the

  25   court at least in Duvall Electric and other cases that it

14:24   1   cites looks at, is whether or not a willing witness is a

2   willing witness and what the cost would be.  In this case

3   we don't have any evidence before in the Court as to what

4   the cost for a willing witnesses would be.

5              THE COURT:  Most of those third-party witnesses

6   are in the Shreveport area?

7              MS. WALKER:  The nonparty witnesses for

8   Patterson, the driller himself --

9              THE COURT:  I'm sorry.  Nonparty witnesses.

10  Thank you.

11             MS. WALKER:  The driller himself, Joe Paul, is

12  in Lewisville, right north of Dallas.  Several of the

13  other ones I think we have listed on our --

14             THE COURT:  As you said those employees of the

14:25 15  driller, the Patterson Company, the people that were there

16  as witnesses they have scattered to the winds and followed

17  other opportunities.

18             MS. WALKER:  I believe they are still with

19  Patterson.  Joe Paul is still with Patterson.  He's in

20  Lewisville.  There were five other individuals on site.

21  Not necessarily on the rig at the time but at least on

22  duty at the time.  One of them lives in Augusta, Arkansas.

23  One in Tyler, Texas.  One in Gardendale, Texas.  One in

24  Jasper, Georgia and another in Tyler, Texas.  So to say it

25  would be more convenient for them in Shreveport is not

14:25   1    necessarily the case.  Those are the individuals that we

  2    understand were on duty.

  3            THE COURT:  I'm wondering if I could anticipate

  4    that if I did transfer this case -- If I did not, then the

  5    defendant would probably bring Patterson in.  Since they

  6    have sued them in Louisiana you'd think -- That seems to

  7    be an assumption that would hold water.

  8            MS. WALKER:  That's I think probably a

  9    reasonable assumption, although I couldn't speak for them.

10    I will say that I was a little bit surprised just as I was

11    surprised when this motion to transfer venue came across

12    so late in time.  If they were going to do that, the

13    deadline to join additional parties was back on September

14    15th.  So had they wished to do that, they could have

14:26 15    brought Patterson in this lawsuit before that time.

16            THE COURT:  Okay.  So at least under the

17    scheduling order, the time for bringing in third parties

18    has elapsed.

19            MS. WALKER:  That's correct.  To my

20    understanding, there is nothing that would precludes them

21    for moving for leave to do that regardless, and Patterson

22    is obviously on notice that this lawsuit is pending as

23    well.

24            THE COURT:  Thank you.  Continue.  Thank you so

25    much, Ms. Walker.

14:27  1            MS. WALKER:  Along with the cost of attendance

2       for willing witnesses, one of the other factors that is

3       looked at is whether or not compulsory process or subpoena

4       power can be used to bring in nonwilling witnesses.  And

5       the Courts in the Northern District of Texas have found in

6       similar cases that the subpoena factor is neutral where

7       the defendant has not alleged that nonparty witnesses are

8       unwilling to testify, and that's exactly what we have

9       here.  That's what we had in the Duvall Electric case, and

10      there was a case Ternium International U.S.A. that Judge

11      Fish decided back in 2009 which had a similar fact

12      situation.  That's cited in our brief as well.  All of

13      these factors that we look at and have been provided by

14      the defendants in their brief are not exhaustive, and the

14:28 15   Court obviously has the discretion to look at a number of

16      different factors as to what would make it convenient for

17      the parties.  But looking at the main issues that

18      defendant has brought up in their pleadings, which is

19      essentially the witnesses and availability of witnesses,

20      and what plaintiff in response, J-W Operating Company, has

21      said, which is the delay that we are faced with and the

22      things that have occurred in the meantime to try to get

23      this case running for trial militate in favor of North

24      Texas as being that forum.

25            Where the plaintiff chooses forum has been found

14:28 1    to be of paramount consideration by some of these Northern

2    District of Texas cases, and where its place of

3    incorporation and principal place of business is also in

4    that same forum, more weight is placed on that choice.

5         The local interest being another factor, local

6    interest of the Dallas community and the Northern District

7    in resolving claims that involve local businesses like J-W

8    Operating Company is also a factor to be considered.

9         If the Court does not have any further

10   questions, I will rest.

11        THE COURT:  No.  Thank you so much for that

12   excellent presentation, Ms. Walker.  You have and

13   Mr. Lambert have both done a good job.

14        Let me reflect on this a little bit more.  I

14:29 15   will enter an order that denies the motion for protective

16   order as moot.  I'm glad to see you all are working

17   together.  I'll think on this, and then I should give you

18   and answer hopefully by the end of the week, would be my

19   goal.  But let me work on it a little bit more.  The

20   arguments were excellent, and it's always good.  It's

21   always a pleasure to have really good lawyers in court,

22   and so I am starting the new year off right, and I

23   appreciate the good help that you have given me in every

24   respect.  I hope you all are having a good new year and

25   may 2012 be healthy, happy and prosperous for you.

14:30   1                    Thank you so much.

         2

         3

         4

         5

         6

         7

         8

         9

        10

        11

        12

        13

        14

        15

        16

        17

        18

        19

        20

        21

        22

        23

        24

        25

1                     C E R T I F I C A T I O N

2

3        I, Cassidi L. Casey, certify that during the

4    proceedings of the foregoing-styled and -numbered cause, I

5    was the official reporter and took in stenotypy such

6    proceedings and have transcribed the same as shown by the

7    above and foregoing Pages 1 through 18 and that said

8    transcript is true and correct.

9

10       I further certify that the transcript fees and format

11   comply with those prescribed by the court and the Judicial

12   Conference of the United States.

13

14

15                          s/Cassidi L. Casey
                            _____
16                          CASSIDI L. CASEY
                            UNITED STATES DISTRICT REPORTER
17                          NORTHERN DISTRICT OF TEXAS
                            DALLAS DIVISION
18                          CSR NUMBER 1703

19

20

21

22

23

24

25

< Dates >
**December 7th** 8:5, 8:9
**January 4, 2012** 1:13
**may 2012** 17:25
**September 15th** 15:13
**-numbered** 19:4
**.O.** 1:30


< 1 >
**1** 19:7
**11-CV-920** 2:6
**11-cv-920-f** 1:8
**1100** 1:46
**130** 1:30
**15D6L** 1:46
**16th** 1:39
**1703** 19:21
**18** 19:7
**1800** 7:3
**19th** 7:24, 8:2


< 2 >
**2.1** 13:12
**2009** 16:11
**2011** 11:4
**20th** 8:2
**214-354-3139** 1:48
**214/987-9600** 1:41


< 3 >
**30th** 8:7
**3:** 1:8, 2:6


< 7 >
**75152** 1:31
**75231** 1:40
**75242** 1:47


< 8 >
**8750** 1:39


< 9 >
**972/845-2222** 1:32

< A >
**A.** 1:27, 1:36
**able** 3:19, 13:6, 13:23
**above** 19:7
**accident** 2:25, 4:8, 12:12
**according** 13:3
**across** 15:11
**act** 4:1
**action** 6:23, 9:11
**actions** 4:9
**activities** 4:10
**actual** 5:7, 5:21
**actually** 5:3, 6:8, 10:11, 12:2
**Addison** 9:16
**additional** 5:11, 15:13
**address** 12:10
**admit** 9:8
**affidavit** 13:3
**agreement** 7:16
**aids** 7:14
**Airlines** 12:3
**alleged** 16:7
**alone** 13:15
**although** 15:9
**amended** 6:7, 10:12
**American** 12:3
**animal** 4:16
**announce** 2:3
**answer** 11:5, 17:18
**anticipate** 15:3
**anybody** 4:12, 12:16
**apparently** 6:9
**appears** 4:25, 6:12
**apply** 4:13, 4:15
**appreciate** 7:9, 17:23
**approach** 8:25
**appropriate** 6:19
**approving** 13:11
**area** 7:6, 13:4, 13:5, 14:6
**arguing** 4:17
**argument** 7:8, 9:1, 9:7
**arguments** 4:2, 6:21, 17:20
**Arkansas** 14:22
**assume** 5:10
**assumption** 15:7, 15:9
**attempted** 3:4
**attempts** 12:14, 13:17
**attend** 13:7
**attendance** 12:23, 13:14,

16:1
**Augusta** 14:22
**authenticate** 13:10
**authentication** 13:13
**availability** 16:19
**away** 11:17
**awe** 3:21


< B >
**back** 11:3, 15:13, 16:11
**backtrack** 9:14
**barely** 3:16
**Based** 5:9, 5:21, 9:16, 10:8
**beforehand** 8:11
**beg** 3:6
**behalf** 5:3, 5:4
**believe** 2:17, 5:20, 14:18
**better** 10:1
**bit** 7:13, 8:20, 9:14, 12:11, 15:10, 17:14, 17:19
**Bossier** 12:13
**Box** 1:30
**Boyle** 11:2, 11:23, 12:1, 12:5
**brief** 12:3, 16:12, 16:14
**briefcase** 3:17
**briefing** 9:15
**bright** 3:19
**bring** 10:9, 15:5, 16:4
**bringing** 15:17
**brought** 15:15, 16:18
**bulk** 6:12, 7:7
**burden** 10:22
**business** 9:17, 13:10, 13:15, 17:3
**businesses** 17:7


< C >
**call** 2:2, 2:4
**capped** 5:17
**cares** 5:12
**carry** 3:17
**case** 2:2, 2:5, 2:18, 3:11, 3:25, 4:14, 5:14, 5:19, 5:20, 6:1, 6:3, 6:6, 6:20, 8:19, 10:7, 10:10, 10:23, 11:3, 11:10, 11:12, 11:19, 11:21, 11:23, 12:2, 12:6, 12:8, 12:24, 13:12, 14:2, 15:1, 15:4, 16:9,

16:10, 16:23
**cases** 3:10, 11:1, 13:25, 16:6, 17:2
**CASEY** 1:45, 19:3, 19:15, 19:17
**casing** 3:2, 3:3, 5:6
**CASSIDI** 1:45, 19:3, 19:17
**Cassidi45@aol.com** 1:49
**cause** 19:4
**Central** 1:39
**certainly** 6:13
**certify** 19:3, 19:10
**choice** 17:4
**chooses** 16:25
**cited** 12:2, 16:12
**cites** 14:1
**claiming** 3:6
**claims** 17:7
**clear** 11:14
**Clearly** 3:11, 3:25, 6:15
**clerk** 2:2
**client** 3:9, 5:3
**colleague** 11:2
**comes** 4:20
**commend** 8:25
**Commerce** 1:46
**community** 17:6
**companies** 5:5, 5:8, 5:9, 13:20
**Company** 1:8, 2:6, 2:8, 3:6, 6:5, 8:18, 9:15, 10:16, 10:18, 10:19, 13:5, 13:9, 13:18, 14:15, 16:20, 17:8
**compel** 8:3
**completed** 12:15
**comply** 19:11
**compulsory** 16:3
**concerns** 8:15
**Conference** 19:12
**confirm** 7:18
**consideration** 17:1
**considered** 17:8
**Consulting** 12:4
**contention** 13:22
**contests** 4:12
**Continue** 15:24
**convenient** 14:25, 16:16
**copy** 11:21
**corporate** 8:4, 8:8
**corporation** 9:16, 9:18

**correct** 2:24, 6:4, 15:19, 19:8
**cost** 12:23, 13:7, 14:2, 14:4, 16:1
**counsel** 2:3, 2:24, 4:20, 9:6
**course** 6:22, 9:12
**Courts** 10:21, 16:5
**cross-wise** 7:11
**CSR** 19:21

**< D >**
**DALLAS** 1:3, 1:40, 1:47, 3:8, 3:11, 5:21, 5:23, 6:15, 7:2, 9:10, 9:16, 11:15, 12:21, 13:5, 13:23, 14:12, 17:6, 19:20
**damage** 3:1
**damages** 13:12
**David** 1:27, 2:9
**days** 7:3, 11:16
**deadline** 8:6, 15:13
**deals** 8:15
**December** 8:6
**decided** 10:9, 16:11
**decisions** 13:18
**Defendant** 1:13, 1:36, 2:17, 6:2, 10:22, 11:4, 15:5, 16:7, 16:18
**defendants** 16:14
**delay** 8:3, 8:11, 8:14, 8:16, 10:25, 11:20, 12:5, 12:6, 16:21
**denied** 11:3, 12:5
**denies** 17:15
**deny** 7:22
**deposition** 4:4, 7:16, 7:17, 7:24, 8:4, 8:12
**depositions** 7:11, 8:1, 8:19, 13:24
**designate** 8:7
**designated** 8:13, 11:8
**designees** 13:19
**despite** 8:9, 8:10
**differ** 3:7
**difference** 4:19
**different** 4:16, 10:19, 12:20, 12:25, 16:16
**disclosed** 6:7
**disclosure** 13:10
**Disclosures** 5:1, 6:7, 10:12,

11:6
**discovery** 3:25, 5:11, 8:17, 8:18, 11:16
**discretion** 16:15
**disruptive** 12:8
**DISTRICT** 1:1, 1:2, 3:18, 9:9, 9:10, 10:17, 16:5, 17:2, 17:6, 19:18, 19:19
**DIVISION** 1:3, 19:20
**dmiller@milmen.com** 1:33
**dollars** 13:13
**done** 4:11, 8:13, 8:16, 8:17, 10:5, 13:14, 17:13
**dragging** 7:1
**drill** 9:20
**drilled** 3:5, 4:10, 12:13
**driller** 5:19, 5:22, 5:23, 5:25, 6:6, 6:16, 9:18, 10:13, 14:8, 14:11, 14:15
**Drilling** 5:17, 6:5, 9:18, 9:22, 10:3, 12:13, 12:15, 12:17, 12:19
**drive** 7:4
**dropped** 3:3
**due** 12:5
**during** 19:3
**duty** 9:22, 14:22, 15:2
**Duvall** 11:2, 11:21, 12:5, 13:25, 16:9

**< E >**
**easiest** 7:20
**easy** 11:20
**elapsed** 15:18
**Electric** 11:3, 11:21, 12:6, 13:25, 16:9
**Email** 1:33, 1:42, 1:49
**employees** 14:14
**end** 4:18, 17:18
**enough** 10:6
**enter** 17:15
**entered** 11:7
**environment** 7:1
**ERISA** 11:12
**Essentially** 2:23, 4:7, 6:11, 6:23, 16:19
**eventually** 3:4, 4:13
**everybody** 7:1
**Everything** 4:8, 6:24

**evidence** 14:3
**exactly** 16:8
**excellent** 17:12, 17:20
**exchanged** 11:6
**exhaustive** 16:14
**expeditious** 11:20
**expensive** 11:20
**experts** 8:7, 8:13, 11:7
**Expwy** 1:39


**< F >**
**faced** 16:21
**fact** 16:11
**factor** 16:6, 17:5, 17:8
**factors** 10:24, 10:25, 11:18,
13:8, 16:2, 16:13, 16:16
**facts** 4:13
**far** 5:6, 8:14, 10:15, 13:16
**FARLEY** 1:38
**favor** 10:23, 16:23
**February** 11:4
**federal** 3:8, 6:21
**fees** 19:10
**few** 4:24, 7:5
**Field** 2:7, 2:12, 2:17, 2:25,
8:8, 13:2
**figure** 4:5
**filed** 3:7, 3:9, 9:11, 11:6
**filing** 11:5
**finds** 7:20
**fine** 7:23
**First** 9:6
**Fish** 5:5, 16:11
**fishing** 12:14, 13:16, 13:19
**five** 13:8, 14:20
**fix** 5:13, 5:16
**FLETCHER** 1:38
**Floor** 1:39
**fly** 7:4
**folks** 9:20, 10:2
**followed** 14:16
**foregoing** 19:7
**foregoing-styled** 19:4
**format** 19:10
**Forty** 3:18
**forum** 16:24, 16:25, 17:4
**found** 16:5, 16:25
**four** 9:22, 11:4, 11:8, 11:17
**FRYE** 2:4, 2:6

**Furgeson** 1:20


**< G >**
**Gardendale** 14:23
**generally** 10:21
**Georgia** 9:25, 14:24
**getting** 7:11
**give** 2:19, 17:17
**given** 17:23
**Glad** 2:16, 8:23, 17:16
**goal** 17:19
**gotten** 7:10
**Great** 2:10, 11:25
**guess** 4:23
**guy** 3:20


**< H >**
**half** 11:17
**handful** 9:21
**handled** 9:7
**happened** 4:8, 4:9, 6:24,
10:15
**happening** 4:19
**happy** 17:25
**hard** 5:1
**hauled** 5:22
**head** 12:18
**healthy** 17:25
**hear** 9:3
**Hearing** 1:19
**heavily** 12:7
**help** 17:23
**helpful** 9:1, 11:25, 12:19
**hiccups** 8:25
**hold** 15:7
**hole** 3:3, 3:4, 3:5, 12:14
**holidays** 7:19
**honestly** 8:12
**Honor** 4:25, 7:8
**Honorable** 1:20
**hope** 17:24
**Hopefully** 4:4, 8:21, 17:18
**hours** 7:5
**hurt** 3:1


**< I >**
**implicated** 10:6

**in.** 15:5
**incident** 4:24
**incorporation** 17:3
**individuals** 5:7, 14:20, 15:1
**information** 10:11, 10:14
**initial** 8:4, 8:24
**instance** 10:12
**instructive** 11:2, 12:19
**interest** 7:7, 17:5, 17:6
**International** 16:10
**interpreting** 4:17
**investigation** 10:8
**invoices** 13:11
**involve** 17:7
**involved** 5:2, 5:7
**involves** 2:25
**issue** 8:2, 8:15, 8:22, 9:12
**issues** 16:17
**itself** 9:8, 12:20


**< J >**
**J-W** 1:8, 2:6, 2:8, 8:18, 9:15,
10:16, 10:18, 13:4, 13:9,
13:18, 16:20, 17:7
**Jasper** 14:24
**job** 17:13
**Joe** 6:6, 9:18, 14:11, 14:19
**join** 15:13
**joint** 11:5
**Judge** 3:14, 3:18, 3:19, 11:2,
11:23, 12:1, 12:5, 16:10
**Judicial** 19:11
**Julie** 1:28, 2:9
**jurisdiction** 9:24
**jury** 7:6


**< K >**
**Keith** 1:36, 2:13
**keith.robb@fletcherfarley.c
om** 1:42
**Kenneth** 1:37, 2:13
**kind** 7:10, 11:10, 12:21
**knowledge** 3:22, 13:21


**< L >**
**L.** 1:45, 19:3, 19:15, 19:17
**Lambert** 1:37, 2:13, 2:19,

4:7, 9:2, 17:13
**late** 15:12
**law** 4:13, 4:15, 4:18, 12:2
**laws** 4:15
**lawsuit** 3:7, 3:9, 10:9, 15:15, 15:22
**lawyer** 4:17, 4:20
**lawyers** 4:21, 8:24, 17:21
**least** 5:6, 13:25, 14:21, 15:16
**leave** 15:21
**left** 11:16
**Lewisville** 6:8, 14:12, 14:20
**life** 10:3
**listed** 13:9, 13:10, 14:13
**little** 4:3, 8:20, 9:14, 12:11, 15:10, 17:14, 17:19
**lives** 14:22
**LLP** 1:38
**local** 4:19, 5:23, 6:25, 7:6, 7:7, 17:5, 17:7
**located** 6:16, 6:17, 13:2, 13:3, 13:5
**location** 7:18, 10:13, 12:12
**locked** 13:3
**logging** 13:20
**long** 3:17, 3:21, 13:17
**longer** 6:20
**look** 3:21, 9:13, 16:13, 16:15
**looked** 16:3
**looking** 13:7, 16:17
**looks** 14:1
**lot** 3:25, 9:19, 12:2
**Louisiana** 2:18, 2:25, 3:9, 3:12, 3:13, 3:23, 4:8, 4:12, 4:13, 4:15, 4:17, 4:18, 4:20, 4:21, 5:9, 5:10, 5:20, 5:23, 5:25, 6:3, 6:13, 6:23, 6:24, 10:10, 12:13, 15:6
**Louisville** 9:19

**< M >**
**ma'am** 9:5
**main** 10:25, 16:17
**mainly** 12:24, 13:2
**man** 10:16, 10:19
**matter** 4:14, 12:20
**matters** 7:2, 7:7, 9:1
**meantime** 16:22
**meet** 8:6

**MENTZER** 1:29
**merits** 8:9
**militate** 11:18, 16:23
**Miller** 1:27, 1:29, 2:9, 2:10
**million** 13:13
**minute** 4:6
**mishap** 7:14
**missed** 7:19
**money** 5:16
**months** 11:5, 11:8, 11:9, 11:17
**moot** 7:22, 17:16
**Motion** 1:19, 7:14, 7:21, 8:3, 8:10, 8:14, 8:20, 9:8, 11:3, 12:4, 15:11, 17:15
**move** 11:17
**moved** 12:16
**moving** 15:21
**MR. LAMBERT** 2:13, 2:21, 2:23, 3:15, 3:23, 4:25, 6:2, 6:9
**MR. ROBB** 7:13, 7:23
**Ms** 2:10, 7:17, 9:3, 14:7, 15:25, 16:1, 17:12
**MS. WALKER** 2:9, 6:5, 8:1, 9:4, 9:6, 10:8, 11:12, 11:24, 12:1, 14:11, 14:18, 15:8, 15:19

**< N >**
**N2** 12:3
**name** 10:13
**names** 2:3, 5:8
**necessarily** 9:23, 13:19, 14:21, 15:1
**necessary** 13:24
**need** 7:15, 7:25, 9:12
**neutral** 16:6
**new** 5:17, 17:22, 17:24
**No.** 17:11
**Nobody** 3:11, 4:1, 6:15, 12:18
**Nonparty** 13:1, 13:6, 14:7, 14:9, 16:7
**nonwilling** 16:4
**North** 14:12, 16:23
**NORTHERN** 1:2, 9:10, 10:17, 16:5, 17:1, 17:6, 19:19
**nothing** 12:18, 15:20

**notice** 4:3, 7:10, 7:17, 15:22
**NUMBER** 1:8, 5:4, 6:12, 16:15, 19:21
**numerous** 11:1

**< O >**
**obviously** 4:14, 15:22, 16:15
**occurred** 16:22
**offices** 6:16
**official** 7:25, 19:5
**Oil** 2:7, 2:12, 2:17, 2:25, 3:2, 8:8, 13:2
**Oilfield** 1:12
**Okay** 2:17, 7:18, 15:16
**One** 8:15, 9:7, 9:25, 10:19, 10:24, 11:1, 11:17, 12:10, 13:8, 13:20, 13:24, 14:22, 14:23, 16:2
**ones** 14:13
**Operating** 1:8, 2:6, 2:8, 8:18, 9:15, 10:16, 10:18, 13:4, 13:9, 13:18, 16:20, 17:8
**operation** 5:17
**opinion** 11:22, 12:1, 12:3
**opportunities** 14:17
**opposed** 7:1
**order** 8:7, 8:21, 11:7, 12:9, 15:17, 17:15, 17:16

**< P >**
**Pages** 19:7
**Palmer** 1:31
**paramount** 17:1
**Part** 8:2, 9:7
**participants** 13:21, 13:22
**parties** 7:10, 7:12, 15:13, 15:17, 16:17
**parts** 12:16
**party** 5:19, 5:20, 6:3, 6:6, 10:10, 12:25, 13:2
**Patterson** 6:5, 9:22, 10:4, 10:5, 10:9, 10:14, 14:8, 14:15, 14:19, 15:5, 15:15, 15:21
**Paul** 6:7, 9:18, 14:11, 14:19
**PC** 1:29
**pending** 9:11, 15:22
**pending.** 12:9

**people** 5:10, 5:18, 7:4, 7:16, 14:15
**perfect** 2:22
**person** 5:21, 5:23
**personally** 4:16
**personnel** 12:11, 13:18
**Phone** 1:32, 1:41, 1:48
**place** 3:25, 6:18, 6:24, 9:17, 17:2, 17:3
**placed** 17:4
**places** 10:1
**Plaintiff** 1:9, 1:27, 3:5, 5:4, 11:13, 16:20, 16:25
**Plaintiffs** 3:7, 5:12, 6:16
**plan** 10:5
**playing** 7:19
**pleadings** 16:18
**pleasant** 3:20
**please** 2:4
**pleasure** 17:21
**plugged** 3:5, 4:11
**point.** 3:10
**poised** 7:17
**portion** 8:14
**power** 16:4
**practical** 8:15, 11:19
**precedence** 11:13
**precludes** 15:20
**prefer** 4:17
**prescribed** 19:11
**presentation** 17:12
**presumption** 11:13, 11:14
**pretty** 10:3
**primarily** 13:5
**principal** 9:17, 17:3
**private** 10:24, 10:25, 11:18
**Probably** 3:18, 6:13, 15:5, 15:8
**problem** 4:4, 5:16
**problems** 11:19
**proceedings** 19:4, 19:6
**process** 5:7, 16:3
**professional** 8:25
**proper** 6:18, 9:8, 11:16
**prosperous** 17:25
**protective** 7:15, 8:21, 17:15
**prove** 10:22
**provide** 10:11
**provided** 16:13
**public** 10:24

**purposes** 9:13, 13:11
**push** 8:19

**< Q >**
**question** 6:19, 13:16
**questions** 6:17, 17:10
**quite** 4:24, 8:12

**< R >**
**reached** 7:15
**read** 9:15
**really** 4:24, 5:12, 9:21, 11:1, 17:21
**reasonable** 15:9
**records** 13:11, 13:13, 13:15
**reflect** 17:14
**regardless** 15:21
**related** 6:21
**relating** 4:9
**relevant** 5:14, 5:18, 5:19, 6:20
**relied** 12:2
**remediation** 3:4, 4:10, 5:4
**Remind** 8:13, 11:10
**removal** 9:7, 9:12
**removed** 3:8, 6:20
**Reported** 1:45
**REPORTER** 19:5, 19:18
**reports** 11:6
**representation** 2:4
**representative** 8:5, 8:8
**requested** 8:19
**research** 10:6
**resolved** 6:25
**resolving** 7:6, 17:7
**respect** 17:24
**response** 16:20
**responsibility** 3:6
**rest** 3:20, 17:10
**result** 7:23
**rig** 9:20, 10:3, 12:13, 12:15, 12:20, 14:21
**Rm** 1:46
**Robb** 1:36, 2:14, 2:19
**roughly** 13:12
**Royal** 1:20
**run** 3:2
**running** 16:23

**< S >**
**s/cassidi** 19:15
**SALINAS** 1:38
**saw** 5:14
**scattered** 9:23, 14:16
**scheduled** 7:24, 8:1
**scheduling** 11:7, 12:9, 15:17
**seems** 15:6
**sense** 6:25, 7:5
**sent** 8:18
**service** 3:21
**Services** 1:12, 2:7, 2:12, 2:18, 8:8, 13:2
**set** 8:5, 8:21
**Several** 14:12
**SHIPMAN** 1:38
**shown** 11:21, 19:6
**Shreveport** 2:25, 3:10, 6:17, 9:24, 10:2, 12:21, 13:4, 14:6, 14:25
**sidetracked** 8:20, 12:15
**significant** 8:17
**similar** 16:6, 16:11
**simply** 12:7
**sir** 4:25
**sit** 8:11
**site** 5:22, 10:17, 12:12, 12:17, 12:19, 14:20
**sits** 9:10
**sitting** 3:24
**situation** 4:7, 16:12
**six** 11:9
**sixty** 11:16
**somebody** 3:1
**somehow** 3:3
**soon** 7:18
**sorry** 14:9
**sort** 9:6
**Sounds** 8:24
**spent** 5:15
**Stagg** 3:15
**stand** 2:21
**started** 5:17, 7:11
**starting** 17:22
**state** 3:8, 4:15, 9:11
**statement** 13:10
**statements** 10:14
**STATES** 1:1, 9:9, 19:12,

19:18
**status** 11:5
**stenotypy** 19:5
**stopping** 3:10
**straightened** 4:5
**Street** 1:46
**string** 3:3
**strong** 10:22
**strongly** 12:7
**stuck** 6:11
**subpoena** 16:3, 16:6
**sue** 10:5
**sued** 10:4, 15:6
**surprise** 3:7
**surprised** 15:10, 15:11
**suspect** 4:18

**< T >**
**talked** 12:11
**Ternium** 16:10
**testify** 10:20, 16:8
**TEXAS** 1:2, 1:47, 4:16, 9:16,
9:17, 14:23, 14:24, 16:5,
16:24, 17:2, 19:19
**third** 15:17
**third-party** 14:5
**thirty** 3:18
**three** 7:3, 8:1, 9:22
**threshold** 4:14
**together** 7:19, 8:24, 17:17
**Tom** 3:15
**Took** 6:23, 13:17, 19:5
**transcribed** 19:6
**transcript** 19:8, 19:10
**Transfer** 1:19, 8:14, 10:23,
11:3, 11:19, 12:4, 12:7, 15:4,
15:11
**transitory** 10:3, 12:21
**trial** 11:8, 11:17, 11:20, 16:23
**tried** 6:18, 6:25, 8:19
**trip** 12:18
**trouble** 7:12
**true** 19:8
**try** 16:22
**trying** 3:11, 5:5, 5:13, 5:15,
5:16, 8:5, 8:10
**two** 7:3, 12:24
**TX** 1:31, 1:40
**Tyler** 14:23, 14:24

**type** 6:25
**types** 12:25

**< U >**
**understand** 9:21, 15:2
**understanding** 9:19, 15:20
**unfortunately** 7:18
**UNITED** 1:1, 9:9, 19:12,
19:18
**unless** 11:14
**unsuccessful** 12:14
**Until** 5:10
**unwilling** 10:20, 16:8
**UTI** 6:5

**< V >**
**venue** 6:21, 9:8, 10:23,
11:13, 11:15, 12:4, 15:11
**versus** 2:7
**view** 10:15
**views** 2:19
**vs** 1:10

**< W >**
**waited** 11:4
**waiting** 3:24
**waive** 6:21
**waiving** 4:1
**Walker** 1:28, 2:9, 2:10, 7:17,
9:3, 14:7, 15:25, 16:1, 17:12
**wants** 3:11, 4:1
**water** 15:7
**week** 17:18
**weighed** 12:6
**weight** 11:15, 17:4
**Welcome** 2:11, 2:15
**Whatever** 7:20
**whether** 4:19, 4:21, 5:15,
5:16, 5:22, 6:19, 12:20,
13:16, 14:1, 16:3
**will** 2:4, 2:24, 3:24, 4:5,
15:10, 17:10, 17:15
**willing** 13:6, 13:21, 13:22,
13:23, 14:1, 14:2, 14:4, 16:2
**winds** 9:23, 14:16
**wished** 15:14
**withdraw** 7:20

**within** 9:24, 10:17
**without** 13:14
**witness** 14:1, 14:2
**Witnesses** 4:24, 5:2, 6:12,
12:23, 12:25, 13:1, 13:2,
13:4, 13:6, 13:8, 13:14, 14:4,
14:5, 14:7, 14:9, 14:16, 16:2,
16:4, 16:7, 16:19
**Wonderful** 2:15, 3:19
**wondering** 15:3
**work** 8:10, 8:16, 8:17, 9:19,
17:19
**worked** 10:11, 10:19
**working** 7:12, 8:24, 10:3,
17:16
**worry** 4:6
**written** 8:17, 8:18

**< Y >**
**year** 17:22, 17:24
**years** 3:18, 3:19, 3:21